United States District Court
Southern District of Texas

**ENTERED**

December 18, 2017

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PATRICIA M. ZUNIGA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-35 |
| | § | |
| CAROLYN W COLVIN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Patricia Zuniga brought this action on January 26, 2017, seeking review of the final decision of the Commissioner of the Social Security Administration that she was not disabled. (D.E. 1). On July 26, 2017, Plaintiff filed a Motion for Summary Judgment and Brief in Support of her claim. (D.E. 11; D.E. 11-1). On September 11, 2017, the Commissioner filed a Responsive Brief. (D.E. 12). For the reasons that follow, it is respectfully recommended that Plaintiff's Motion for Summary Judgment be **DENIED** and the Commissioner's determination that Plaintiff is not disabled be **AFFIRMED**.

## I.  JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). This case has been referred to the undersigned United States Magistrate Judge for case management and to furnish a recommendation pursuant to 28 U.S.C. § 636. (D.E. 3).

## II.    BACKGROUND

Plaintiff protectively filed her initial claim for Disability Insurance Benefits ("DIB") on March 25, 2013 and for Supplemental Security Income ("SSI") on March 27, 2013, alleging a disability onset date of January 1, 2009, due to back and shoulder impairments, knee pains, nerve damage, arthritis, high blood pressure, anxiety, depression, and wrist pain.  (D.E. 7-4, pgs. 26-27; D.E. 7-7, pg. 12).

Plaintiff's application was denied upon initial consideration and was again denied upon reconsideration.  (D.E. 7-5, pgs. 6-7, 14-16).  At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on July 8, 2015, at which Plaintiff and a vocational expert ("VE") testified.  (D.E. 7-3, pgs. 71-110).  At the time of the hearing, Plaintiff was 44 years old with a twelfth grade education.  (D.E. 7-3, pgs. 79-80).  The ALJ issued an unfavorable decision on August 28, 2015, finding Plaintiff not disabled. (D.E. 7-3, pgs. 23-36).   Plaintiff requested the Appeals Council review the ALJ's decision, and the Appeals Council denied her request for review on November 22, 2016, making the ALJ's determination the final decision of the Commissioner under 42 U.S.C. § 405(g).  (D.E. 7-3, pgs. 2-5).  Plaintiff timely filed this action on January 26, 2017, seeking review of the Commissioner's final decision.  (D.E. 1).

The undersigned has reviewed the entire record.  However, only those portions relevant to the pending issues are cited below.

### III.   APPLICABLE LEGAL STANDARDS

#### A.      Standard of Review

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988) (citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present. But, the Court does not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted). "If the [Commissioner]'s findings are supported by substantial evidence, they are conclusive and must be affirmed." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). It is incumbent upon the Court to look at the evidence as a whole and take into account the following factors: (1) objective medical evidence or clinical findings; (2) diagnoses and opinions of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant

and others who have observed him; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

**B.      Disability Determination**

In evaluating a disability claim, the Commissioner follows a five-step process to determine whether (1) the claimant is presently working; i.e. engaged in substantial gainful activity; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant, if determined not to have the residual functional capacity ("RFC") to perform past relevant work, can presently perform other relevant work consistent with claimant's age, education, work experience, and RFC.  20 C.F.R. § 404.1520;[1] *Martinez v. Chater*, 64 F.3d 172, 173-74 (5th Cir. 1995); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.  The claimant bears the burden of proof for the first four steps.  *Bowling*, 36 F.3d at 435.  At the fifth step, the burden initially shifts to the Commissioner to identify other work the claimant is capable of performing.  *Id*.  Once the Commissioner makes the requisite showing, the burden shifts to the claimant to rebut the Commissioner.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).   If the

---

[1]Because "[t]he law and regulations governing the determination of disability are the same for both [DIB] and SSI," *Greenspan,* 38 F.3d at 236, where in this Memorandum and Recommendation the relevant regulation from 20 C.F.R. Pt. 404 (DIB) has been cited, the undersigned has omitted reference to the identical provision in 20 C.F.R. Pt. 416 (SSI).

Commissioner can show the claimant can perform other substantial work within the national economy, the claimant is adjudged to be not disabled.  *Id.*; *see also* 20 C.F.R. § 404.1520(g)(1).  If the Commissioner fails to show the claimant is capable of performing other work, or if the claimant successfully rebuts the Commissioner's findings, the claimant is found to be disabled and is entitled to disability benefits.  20 C.F.R. § 404.1520(g)(1).

## IV.    DISCUSSION

### A.    The ALJ's Determination

With respect to the first and second steps of the analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date, and had the following severe impairments: mild degenerative disc disease of the lumbar spine and cervical spine with some bulging discs in the lumbar spine, small disc protrusion in the thoracic spine, intermittent tremors, fibromyalgia, depression, anxiety, and pain disorder.  (D.E. 7-3, pg. 25).  At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (D.E. 7-3, pg. 26).  The ALJ further held Plaintiff had the RFC to perform light work with the following restrictions: Plaintiff cannot climb ladders, ropes, or scaffolds; she is limited to simple, routine tasks that do not require more than occasional interaction with the public; she cannot perform fast-paced, assembly-type production jobs; she must be in a position that would allow her to stand in place for two minutes to stretch after every 30 minutes of sitting; and she can do frequent but not constant fine motor movements.  (D.E. 7-3, pg. 28).  With respect to the

fourth step, the ALJ found Plaintiff could not perform her past relevant work.  (D.E. 7-3, pg. 35).  Deciding the case at the fifth step, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform a significant number of jobs in the national economy, including cashier-parking lot, ticket taker, and assembler.  (D.E. 7-3, pgs. 35-36).

### B.  Plaintiff's Allegations of Error

Plaintiff contends the ALJ erred in her decision for the following reasons: 1) the ALJ did not properly consider the impairment of fibromyalgia; 2) the ALJ's RFC determination is not supported by substantial evidence, specifically for the ALJ's failure to properly evaluate the opinion evidence of record, fully and fairly develop the record, and properly incorporate Plaintiff's other limitations into the RFC; and 3) the ALJ's assessment of Plaintiff's credibility is not supported by substantial evidence.  (D.E. 11-1).

### C.  The ALJ Properly Assessed Fibromyalgia at Step Two

At the second step in the analysis, the ALJ found Plaintiff had the severe impairment of fibromyalgia, among others.  (D.E. 7-3, pg. 25).  Plaintiff asserts remand is appropriate because the ALJ failed to properly consider this ailment.  (D.E 11-1, pg. 9). Specifically, Plaintiff criticizes the ALJ for stating that "[s]olely for purposes of convenience, without admitting that fibromyalgia has been properly documented, the remainder of the decision will refer to the claimant's physical complaints as 'fibromyalgia.'"  (D.E. 7-3, pg. 26; D.E 11-1, pg. 9).  Plaintiff also criticizes the ALJ for utilizing the 1990 American College of Rheumatology ("ACR") diagnostic criteria for fibromyalgia rather than the 2010 ACR diagnostic criteria.  (D.E 11-1, pg. 10).

Regardless of whether the ALJ admitted fibromyalgia had been properly documented in the medical record, and regardless of which criteria the ALJ used to find an impairment of fibromyalgia, the ALJ explicitly found Plaintiff's fibromyalgia to be severe at Step Two.   Where the ALJ finds a severe impairment at Step Two, the regulations require an assessment of whether the impairment meets or exceeds the criteria of listed impairments in 20 C.F.R. pt. 404, subpt. P, app.1.   20 C.F.R. § 404.1520(a)(4); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001).   This assessment constitutes Step Three of the five-step sequential analysis.   If the impairment meets or exceeds the listed criteria, the claimant is determined disabled, terminating the ALJ's analysis.   Here, the ALJ specifically considered the impairment of fibromyalgia and found it did not medically equal a listing.[2]   This finding resulted in the ALJ proceeding to evaluate Plaintiff's RFC and continue to the next steps in the sequential analysis.   The undersigned therefore recommends the ALJ's methodology was proper and Plaintiff's fibromyalgia was appropriately considered.

### D.    The ALJ's RFC Determination is Supported by Substantial Evidence

Plaintiff next alleges the ALJ's RFC determination was not supported by substantial evidence.   (D.E. 11-1, pg. 11).   The RFC is an assessment, based on all the

---

[2]Plaintiff also asserts the ALJ's consideration of Listing 1.01 was in error.   (D.E. 11-1, pg. 11). However, the applicable social security ruling does not direct the ALJ to look to a particular listing, remarking fibromyalgia cannot meet a listing in Appendix 1 because it is not a listed impairment.   SSR 12-2p, 2012 WL 3104869, at *6 (Jul. 25, 2012).   Instead, SSR 12-2p simply instructs the ALJ to "determine whether [fibromyalgia] medically equals a listing."   *Id.*   Plaintiff fails to demonstrate why the ALJ's use of Listing 1.01 – which Plaintiff's counsel himself describes as "deal[ing] with musculoskeletal impairments" (D.E 11-1, pg. 11) – was erroneous, considering fibromyalgia is a medical condition "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues." [i.e. musculoskeletal]  SSR 12-2p, 2012 WL 3104869 at *2.

relevant evidence, of a claimant's ability to do work-related physical and mental activities on a sustained basis in an ordinary work setting despite impairments.  20 C.F.R. § 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  In formulating the RFC, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  20 C.F.R. § 404.1529.

After consideration of the entire record, the ALJ determined Plaintiff had the RFC to perform light work, with limitations.  (D.E. 7-3, pg. 28).  Specifically, the ALJ found Plaintiff cannot climb ladders, ropes, or scaffolds; she is limited to simple, routine tasks that do not require more than occasional interaction with the public; she cannot perform fast-paced, assembly-type production jobs; she must be in a position that would allow her to stand in place for two minutes to stretch after every 30 minutes of sitting; and she can do frequent but not constant fine motor movements.  (D.E. 7-3, pg. 28).

Plaintiff alleges the ALJ's RFC determination was not supported by substantial evidence for several reasons: 1) the ALJ failed to properly weigh the opinion evidence regarding Plaintiff's physical impairments; 2) failed to properly weigh the opinion evidence regarding Plaintiff's mental impairments; 3) failed to fully and fairly develop the record; and 4) failed to appropriately account for Plaintiff's limitations in social functioning and concentration, persistence, and pace.  (D.E. 11-1, pgs. 12, 16, 18).  The undersigned recommends each of these arguments is without merit and substantial evidence supports the ALJ's RFC determination, as discussed below.

1.      **The ALJ Properly Considered the Opinion Evidence Regarding Plaintiff's Physical Impairments.**

Plaintiff criticizes the little weight the ALJ afforded the opinions of treating physician Alma McDaniel, M.D. and chiropractor Ron Engelmohr, D.C., regarding Plaintiff's physical impairments.  (D.E. 11-1, pg. 13).   In particular, Plaintiff asserts the ALJ committed error in failing to explicitly apply the factors in 20 C.F.R. § 404.1527(c), [3] as elaborated by the Fifth Circuit in *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), in weighing the opinions of these treating sources.

Dr. McDaniel was one of several physicians Plaintiff saw during visits to the Family Academic Medicine Center.  (D.E. 7-8; D.E. 7-13).  Dr. McDaniel opined, on a Texas Health and Human Services Commission Physician's Statement in check-mark format, that Plaintiff was able to work part-time, i.e. 20 hours per week.  (D.E. 7-12, pg. 54).  During a workday, Dr. McDaniel opined Plaintiff could sit, stand, walk, climb stairs and ladders, kneel, squat, and keyboard, each limited to four hours at a time.  (D.E. 7-12, pg. 54).  Dr. McDaniel further opined Plaintiff could not lift, push, or pull more than 5 pounds for more than 30 minutes per day.  (D.E. 7-12, pg. 54).  Dr. McDaniel listed Plaintiff's diagnoses as arthritis, neuropathic pain, and tremors.  (D.E. 7-12, pg. 55).  At a later date, on what appears to be a prescription note, Dr. McDaniel stated Plaintiff could

---

[3]Under this statutory analysis, the ALJ must specifically consider: 1) whether the physician has examined the claimant; 2) the length of treatment, and specifically a) the physician's frequency of examination, and b) the nature and extent of the treatment relationship; 3) the support of the physician's opinion afforded by the medical record; 4) the consistency of the opinion with the record as a whole; 5) the specialization of the treating physician; and 6) any other relevant factors brought to the adjudicator's attention.  20 C.F.R. § 404.1527(c)(1)-(6).

not sit or stand longer than 30 minutes at a time and would need a job that could accommodate her. (D.E. 7-18, pg. 59).

Generally, the opinion of a treating physician who is familiar with the claimant's history should be given great weight in determining disability. 20 C.F.R. § 404.1527(c)(2); *Newton*, 209 F.3d at 455. However, a treating physician's opinions "are far from conclusive," and the sole responsibility to determine a claimant's disability status falls on the ALJ. *Greenspan*, 38 F.3d at 237. The ALJ is entitled to determine the credibility of medical experts and weigh their opinions accordingly. *Id.* Good cause may permit the ALJ to discount the weight of a treating physician's opinion relative to other experts where the treating physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or otherwise unsupported by the evidence. *Newton*, 209 F.3d at 455. Additionally, the Fifth Circuit has characterized responses to a questionnaire format as "typical brief or conclusory testimony" and declined to accord these responses controlling weight when they lack "explanatory notes" or "supporting objective tests and examinations." *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) (quoting *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011)).

In *Newton*, the Fifth Circuit held that where the ALJ rejects the opinion of a treating physician, absent competing first-hand medical evidence from a treating or examining physician controverting the treating physician, the ALJ must analyze the treating physician's views pursuant to the criteria enumerated in 20 C.F.R. § 404.1527(c). *Newton*, 209 F.3d at 453, 458. However, where an ALJ's decision to reject a treating physician's opinion is supported by substantial, contradictory, first-hand evidence from

other medical sources, the ALJ is not required to go through these steps. *Cain v. Barnhart*, 193 F. App'x 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 458); *Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (factor-by-factor analysis unnecessary where there is competing first-hand medical evidence and ALJ finds one doctor's opinion to be more well-founded than another); *see also Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009) ("The *Newton* court limited its holding [that the ALJ analyze the statutory steps] to cases where the ALJ rejects the sole relevant medical opinion before it.").

In the instant case, the undersigned recommends the ALJ did not err in declining to give Dr. McDaniel's opinion controlling weight or in failing to perform the statutory process outlined in 20 C.F.R. § 404.1527(c). The ALJ was not required to accept Dr. McDaniel's findings nor give Dr. McDaniel's opinion controlling weight in light of substantial competing medical evidence, summarized in relevant part below.

As the ALJ discussed in her decision, a variety of medical reports constituting substantial evidence indicated Plaintiff's physical impairments did not reach the degree of limitation Dr. McDaniel pronounced. Regarding the objective medical evidence, apart from mild degenerative disc disease at the L5-S1 level, x-ray results were normal for Plaintiff's chest, shoulder, lumbar spine, and wrist in October 2012. (D.E. 7-8, pg. 25; D.E. 7-3, pgs. 49-52). A subsequent x-ray of Plaintiff's spine in May 2015 showed normal vertebral body heights with good alignment, mild narrowing of the L5-S1 disc space with osteophyte formation, mild facet arthropathy, and no spondylolysis. (D.E. 7-18, pg. 55). Multiple MRIs of Plaintiff's spine – performed as recently as July 2016 –

revealed small disc protrusions and bulges, normal vertebrae and alignment, and no cord signal abnormality or significant spinal canal stenosis.  (D.E. 7-11, pgs. 32-36; D.E. 7-3, pg. 12).  Neurologic lab testing and imaging, including an MRI of the brain in July 2014, yielded normal results.  (D.E. 7-13, pgs. 9, 12; D.E. 7-17, pgs. 3, 29, 34).

With respect to progress notes and other findings, upon physical examination during medical appointments, including those performed by Dr. McDaniel and Plaintiff's chiropractor, Ron Engelmohr, Plaintiff consistently exhibited normal gait, movement, and motor strength of extremities, as well as no edema.  (D.E. 7-8, pgs. 8, 11, 23; D.E. 7-10 pg. 81; D.E. 7-13, pgs. 7, 22, 31, 44).  Dr. McDaniel's and other physicians' treatment notes from Plaintiff's various medical appointments at the Family Academic Medicine Center do not mention Plaintiff having such physical limitations and restrictions.  (D.E. 7-13).  The ALJ also found the range of Plaintiff's daily activities as reported by Plaintiff during Dr. Velda Vela-Trujillo's psychological examination to be inconsistent with a disabling degree of limitation.  (D.E. 7-3, pgs. 29-30).

Therefore, not only are Dr. McDaniel's conclusions unsupported by her own treatment notes, there is "reliable medical evidence" accumulated from numerous visits to the Family Academic Medicine Center, as well as that provided by Plaintiff's chiropractor and Dr. Vela-Trujillo, that does not corroborate the level of limitation Dr. McDaniel suggested.  *Newton*, 209 F.3d at 453.  Nor were Dr. McDaniel's check-mark form responses supported by the objective medical evidence.  *See Heck*, 674 F. App'x at 415 (finding no error in ALJ's decision declining to give controlling weight to physician's responses to questionnaire not accompanied by supportive diagnostic tests or

specific clinical examinations).  Accordingly, the ALJ did not err in declining to assign controlling weight to Dr. McDaniel's opinions and was not required to go through the statutory steps outlined in *Newton* before doing so.

Plaintiff next disputes the little weight the ALJ gave the opinion of Plaintiff's chiropractor, Ron Engelmohr.  The chiropractor opined Plaintiff might have permanent damage and ligamentous and muscular weaknesses in her spine due to her injuries.  (D.E. 7-10, pg. 80).  The undersigned first notes Plaintiff went to the chiropractor immediately following a collision with a motor vehicle in January 2011, and it appears the chiropractor's assessment was confined to treating her injuries stemming from that accident.  Further, a chiropractor is not an "acceptable medical source" listed in the applicable Social Security ruling.  SSR 06-03P, 2006 WL 2329939, at *1 (Aug. 9, 2006).  "[T]he relevant regulations accord less weight to chiropractors than to medical doctors." *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *see also Porter v. Barnhart*, 200 F. App'x 317, 319 (5th Cir. 2006) (ALJ not required to rely on chiropractor's evaluation in making RFC finding because chiropractor is not acceptable medical source).

The ALJ also found the chiropractor's opinions to be internally inconsistent. (D.E. 7-3, pg. 34).  The chiropractor concluded Plaintiff possibly had permanent damage and continuing weaknesses, but found Plaintiff's gait, station, and muscle tone of extremities to be within normal limits, with no atrophy or abnormal movements, and in his treatment notes repeatedly described Plaintiff's response to care as favorable.  (D.E. 7-10, pgs. 79-85).  It was within the ALJ's discretion to give the chiropractor's opinion less weight relative to the reports of the physicians in the record and the substantial

objective medical evidence yielding normal test results, as listed above.  As such, the undersigned recommends the Court find no error.

### 2.     The ALJ Properly Considered the Opinion Evidence Regarding Plaintiff's Mental Impairments.

Plaintiff alleges the ALJ improperly considered her mental limitations in formulating the RFC, in particular for affording moderate weight to the opinion of Dr. Leela Reddy, M.D., and failing to indicate what weight was given to the opinion of Dr. Velda Vela-Trujillo, PhD.  (D.E. 11-1, pgs. 12-15).

Dr. Reddy, a State Agency physician, opined that Plaintiff experiences *moderate* difficulties in her activities of daily living.  (D.E. 7-4, pg. 6).  In her decision, the ALJ found Plaintiff was *mildly* restricted.  (D.E. 7-3, pg. 27).  However, an ALJ is not required to adopt a physician's conclusions.  *See Martinez*, 64 F.3d at 176 ("The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.") (citation omitted).  The ALJ explained Dr. Reddy's opinion was inconsistent with evidence received at the hearing level, including Function Reports in which Plaintiff stated she was able to clean, do laundry, and cook with help from her children, and care for her personal hygiene and grooming but with difficulty due to shoulder, back, and knee pain (D.E. 7-7, pgs. 40, 57).  Therefore, the ALJ concluded Plaintiff has only mild restrictions in performing activities of daily living.  (D.E. 7-3, pg. 33).  The undersigned recommends the ALJ properly weighed conflicting evidence.

Plaintiff also criticizes the ALJ's failure to explain what weight, if any, she gave to the opinion of Dr. Velda Vela-Trujillo, PhD., who performed Plaintiff's psychological

consultative examination.  Regarding activities of daily living, Plaintiff reported to Dr. Vela-Trujillo that she cleans her house and makes simple meals for her children, with assistance; she drives; she spends time with her children and boyfriend; and she gets help from her daughter to take care of her personal and grooming needs but can do some on her own.  (D.E. 7-11, pg. 26).  Dr. Vela-Trujillo commented Plaintiff's functioning would likely be improved with intensive behavioral treatment to help her learn coping strategies for emotional difficulties, stress, and pain management.  (D.E. 7-11, pgs. 28-29).

The regulations require the ALJ to evaluate every medical opinion she receives. 20 C.F.R. § 404.1527(c).  An ALJ can fall short of this obligation by failing to mention a medical opinion in the decision, especially a conflicting one.  *See Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (ALJ committed error in failing to address examining physician's conflicting opinion, thereby making it impossible to know whether the ALJ properly considered and weighed the opinion); *Davidson v. Colvin*, 164 F. Supp. 3d 926, 942 (N.D. Tex. 2015) (citing § 404.1527(c) in finding ALJ committed error by failing to mention doctor or doctor's opinions entirely); *but see Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005) (that an ALJ does not mention a piece of evidence does not necessarily mean she failed to consider it).

However, this is not a case where the ALJ failed to address a medical source statement.  It is clear the ALJ considered Dr. Vela-Trujillo's opinion because she summarized Dr. Vela-Trujillo's psychological report in detail in the decision.  (D.E. 7-3, pg. 31).  Additionally, the ALJ incorporated evidence from this report in analyzing the degree of Plaintiff's impairments, citing Plaintiff's ability to prepare her own meals,

clean, and drive, and that she spends time with her children and boyfriend. (D.E. 7-3, pg. 27). The ALJ's decision therefore sufficiently demonstrates she considered Dr. Vela-Trujillo's opinion as required by the regulations.

Further, Plaintiff has failed to show how the RFC determination would have been different had the ALJ ascribed explicit weight to Dr. Vela-Trujillo's opinion. The content of Dr. Vela-Trujillo's report was not inconsistent with the substantial evidence upon which the ALJ based her disability determination and which was described in the decision. *See Garza v. Astrue*, No. CIV. M-09-133, 2013 WL 2432421, at *13 (S.D. Tex. June 3, 2013) ("Because [the physician's] assessment supports the ALJ's decision, the ALJ's error in failing to explain the weight she gave to [his] opinion was harmless."). Accordingly, the undersigned recommends the ALJ committed no error in her evaluation of the above opinion evidence in determining Plaintiff's RFC.

### 3.    The ALJ Fully and Fairly Developed the Record.

Plaintiff contends next the RFC is flawed because of the ALJ's failure to fully and fairly develop the record by not ordering a consultative examination to investigate the extent of Plaintiff's physical impairments and limitations. Plaintiff alleges a consultative examination was needed to determine the effect of her tremors on her ability to do frequent but not constant fine motor movements. (D.E. 11-1, pgs. 16-17).

"The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citation omitted). "Generally, however, the duty to obtain medical records is on the claimant." *Gonzalez v. Barnhart*, 51 F. App'x

484 (5th Cir. 2002). The decision to require a consultative examination is discretionary. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). A consultative examination becomes "necessary" only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment. *Id.*

Here, the ALJ satisfied her duty to develop the record by questioning Plaintiff about her work history, medical ailments – including her tremors – and ability to perform various tasks and daily activities (D.E. 7-3, pgs. 71-110), and by thoroughly reviewing the medical records from Plaintiff's various health care providers over a period beginning in 2008. *See Brock*, 84 F.3d at 728 (ALJ fully developed record by extensively questioning claimant about his education, training, past work history, circumstances of his injury, and his daily routine, pain, and physical limitations); *see also Gonzalez*, 51 F. App'x at 484 (ALJ, who made numerous inquiries regarding claimant's medical condition and employment history, did not fail to develop the record by not ordering a consultative examination, and a consultative examination was not necessary to enable the ALJ to make a disability determination).

To obtain a remand for an ALJ's failure to develop the record, Plaintiff must demonstrate she was prejudiced by the deficiencies she alleges. *Brock*, 84 F.3d at 728 (explaining plaintiff "must show that he could and would have adduced evidence that might have altered the result") (citation omitted). Plaintiff has failed to make a sufficient showing of prejudice and points to no sufficient evidence that, had the ALJ developed the record further regarding Plaintiff's tremors, would have been offered at the hearing and changed the RFC determination. The ALJ did not have a duty to request consultative

examinations when the record already contained substantial evidence upon which to make a determination. *Gonzalez*, 51 F. App'x at 484.

### 4. The ALJ Properly Incorporated Limitations in Social Functioning and Concentration, Persistence, and Pace.

Plaintiff's final criticism of the ALJ's RFC determination is that the ALJ failed to adequately address Plaintiff's limitations in social functioning and ability to maintain concentration, persistence, or pace. (D.E. 11-1, pg. 18). Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work setting. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C3.

An ALJ need not include in the RFC the specific words "moderate difficulties in the area of concentration, persistence, or pace" where, as here, the decision shows the ALJ considered those limitations in reaching the RFC determination. *Downing v. Astrue,* No. 2:11-CV-0170, 2012 WL 4354928, at *5 (N.D. Tex. Sept. 7, 2012), *report and recommendation adopted*, No. 2:11-CV-0170, 2012 WL 4354915 (N.D. Tex. Sept. 24, 2012). First, the ALJ stated that the mental function analysis and resulting degree of limitation was reflected in the RFC assessment. (D.E. 7-3, pg. 28). Then, having found Plaintiff experienced moderate difficulties in this area, the ALJ included appropriate restrictions in the RFC by limiting Plaintiff to simple, routine tasks that do not require more than occasional interaction with the public. (D.E. 7-3, pgs. 27-28). *See Bordelon v. Astrue*, 281 F. App'x. 418, 423 (5th Cir. 2008) (restrictions to rare public interaction, low stress, and simple instructions in RFC reasonably incorporate a plaintiff's moderate

concentration, persistence, and pace limitations). Thus, the RFC does not fail to incorporate moderate limitation in concentration, persistence, or pace. *See, e.g., Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (limitations on which the RFC is based are not required to be included verbatim in the RFC); *Short v. Astrue*, No. 3:11-cv-713-N-BN, 2013 WL 655020, at *6 (N.D. Tex. Feb. 5, 2013) *report and recommendation adopted*, No. 3:11-CV-713-N-BN, 2013 WL 655022 (N.D. Tex. Feb. 22, 2013) (ALJ's failure to expressly include exact language regarding concentration, persistence, and pace in RFC did not require remand in absence of showing of prejudice).

Further, even if Plaintiff is correct that the RFC failed to properly incorporate such limitations, she has failed to establish prejudice. *See Downing*, 2012 WL 4354928, at *5 (plaintiff did not prove ALJ committed error where plaintiff did not indicate how she was harmed by ALJ's failure to include those specific terms in RFC). Plaintiff has not shown how the inclusion of additional limitations regarding her social functioning or concentration, persistence, and pace in the RFC would have eliminated any of the jobs identified by the vocational expert. *See Smith v. Colvin*, No. 313-CV-1884-N, 2014 WL 1407437, at *4 (N.D. Tex. Mar. 24, 2014), *report and recommendation adopted,* No. 3:13-CV-1884-N, 2014 WL 1407440 (N.D. Tex. Apr. 11, 2014) (same).

For the above stated reasons, the undersigned recommends the ALJ's RFC determination of Plaintiff's RFC to perform light work, with limitations, is supported by substantial evidence.

**E.     The ALJ's Assessment of Plaintiff's Credibility is Supported by Substantial Evidence**

Lastly, Plaintiff asserts the ALJ's assessment of her credibility is not supported by substantial evidence.  (D.E. 11-1, pg. 19).  The undersigned recommends Plaintiff's argument is without merit.

The ALJ, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility.  *Martinez*, 64 F.3d at 174; *Greenspan*, 38 F.3d at 237.  An ALJ's credibility evaluation is generally entitled to considerable deference by the Court.  *McKnight v. Astrue*, 340 F. App'x 176, 181 (5th Cir. 2009).  Credibility conclusions are precisely the kind of determinations the ALJ is best positioned to make.  *Spruill v. Astrue*, 299 F. App'x 356, 358 (5th Cir. 2008).

Here, the ALJ explained her credibility finding was made in light of the objective medical evidence, which did not support the level of pain and incapacity Plaintiff alleged. (D.E. 7-3, pg. 29).  The ALJ listed the daily activities, as reported by Plaintiff – such as doing laundry, cleaning her home, preparing simple meals for her children, shopping in stores, and driving – as well as the objective medical findings – normal x-rays and MRIs – that led the ALJ to conclude Plaintiff was not entirely credible regarding the effect of her symptoms on her ability to perform work-related activities.  (D.E. 7-3, pgs. 29-33). The ALJ also noted Plaintiff's pain was treated conservatively with physical therapy and

pain medication,[4] (D.E. 7-3, pg. 33), which is inconsistent with a disabling degree of limitation.

The ALJ's explanation of her reasons for finding Plaintiff not entirely credible is all the relevant legal standards require.  *Tate v. Colvin*, No. CIV.A. 13-6552, 2014 WL 4982662, at *16 (E.D. La. Oct. 6, 2014) (citing *James J. Flanagan Stevedores, Inc. v. Gallagher*, 219 F.3d 426, 430 & n.8 (5th Cir. 2000)); *see also Hollis v. Bowen*, 837 F.2d 1378 (5th Cir. 1988) (ALJ complied with relevant legal standards by indicating the credibility choices made and the basis for those choices).  The undersigned recommends the ALJ articulated adequate reasons, based on substantial evidence, for rejecting Plaintiff's testimony regarding the extent of her limitations.

## V.   RECOMMENDATION

For the reasons stated above, it is respectfully recommended that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's determination be **AFFIRMED**, and Plaintiff's cause of action be **DISMISSED**.

Respectfully submitted this 18th day of December, 2017.

Jason B. Libby
United States Magistrate Judge

---

[4]The medical record reflects that generally, Plaintiff was prescribed non-narcotic pain medication, specifically ibuprofen.  (D.E. 7-8, pgs. 7-23; D.E. 7-13, pgs. 4-51).  However, in January 2015, November 2014, and July 2014, she was prescribed tramadol, an opioid.  (D.E. 7-13, pgs. 6, 17, 28).

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).